UNITED STATES of America, Appellee,

v.

Carlos MORALES, Appellant.

No. 83–1714.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1984.

Decided June 28, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 29, 1984.

Thomas E. Dittmeier, U.S. Atty., Charles A. Shaw, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Alan J. Agathen, Clayton, Mo., for appellant.

Before HEANEY, BRIGHT and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Carlos Morales appeals from a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict finding him guilty of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). For reversal appellant argues that the district court erred in denying his motion to suppress evidence seized during a warrantless search of a motel room. On appeal the government argues that appellant lacks standing to challenge the search of the room. For the reasons discussed below, we reverse.

On February 27, 1983, police officer Terry Taylor observed suspicious activity involving room 244 of the Days Inn Motel located in Woodson Terrace, Missouri. Taylor entered the motel to inquire to whom room 244 was registered. Betty Wagner, the desk manager, informed him that the room was registered to a Jesus Pupo through March 2. Wagner also stated that room 244 had received many telephone calls and that whatever activity was occurring in room 244 had to be connected to room 141 because the telephone callers would ask to be connected to room 141 if there was no response in room 244. Later that evening, Officer Taylor returned to the motel. While Wagner was talking to him, she received a telephone call for room 244; the caller stated that there was an emergency and that she must be connected to room 244 immediately. Officer Taylor and police officer Richard Kipper, and James Carrino, the motel's night auditor, went to room 244 to investigate. Carrino knocked on the door and announced his presence. An occupant of the room opened the door and allowed the uniformed officers and Carrino to enter. Upon entering the room, the officers observed drug paraphernalia in plain view. The officers informed the occupants that they were under arrest, attempted to read them their constitutional rights, and asked for identification. The officers, however, had difficulty in communicating because the occupants spoke Spanish. One of the occupants identified himself as Carlos Diaz; the other occupant was later identified as appellant Carlos Morales. While placing Diaz and appellant under arrest, the officers observed appellant place his hand under a cushion of a chair. Officer Kipper reached under the cushion and found a key to room 141. The officers attempted to use Diaz "somewhat as an interpreter" because he understood some "broken English." The officers asked Diaz whether he or appellant possessed or knew about the key to room 141. Diaz disclaimed any interest in the key.

Carrino called the desk to inquire to whom room 141 was registered. The desk manager informed him that the room was registered through March 1 to a Bob Simon of Miami, Florida. Carrino and the officers then went to room 141. Carrino knocked on the door and when there was no response, the officers and Carrino entered. The officers searched the room and seized, among other items, 21 ounces of cocaine, approximately $17,000.00 in cash, a handgun, and narcotics paraphernalia.

Appellant was taken to a Drug Enforcement Administration office, where he was advised of his constitutional rights and questioned by a Spanish-speaking police officer. Appellant stated that he had arrived in the United States from Cuba and was a resident of Miami, Florida. Appellant denied any knowledge of the key to room 141 or that he had ever been in room 141.

Before trial, appellant moved to suppress the evidence. At the suppression hearing, appellant did not present any evidence. Officer Taylor testified that he searched room 141 because "[d]ue to him [unclear whether pronoun refers to appellant or Diaz] disclaiming knowledge of the key or having possession of the key, we felt we should check out room 141, to see if possibly anyone had been hurt in the room or [the room] had been burglarized." From the bench, the district court found that because appellant had possession of the key but had

disclaimed knowledge of the key, the officers had the right to search room 141. The district court also found that because the officers had arrested appellant, they had the right to search room 141.

At trial the government introduced the cocaine, the money, and evidence that appellant's fingerprints were on several items seized from room 141. Appellant objected to the introduction of the evidence on the ground that he was not registered to room 141 and had no connection to the room. At trial appellant admitted that he went to a room on the first floor of the motel, where he had had several beers and had placed several telephone calls to Miami, Florida. He also testified that at the time of his arrest he had disclaimed possession and knowledge of the key to room 141 to the police officers and continued to disclaim any interest in the key or the room. During closing argument, the government stressed that appellant had constructive possession of the cocaine because he had dominion and control over room 141. The government "submit[ted] to [the jury] that [appellant] had the key in his possession."

On appeal the government argues that appellant does not have standing to challenge the search of room 141. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court held that the proper fourth amendment focus should be whether the defendant has a legitimate expectation of privacy in the searched premises and that the defendant has the burden of establishing a legitimate expectation of privacy. *Id.* at 139, 99 S.Ct. at 428. In this case, it is undisputed that appellant offered no evidence to demonstrate that he had a legitimate expectation of privacy in room 141.

▆ Despite appellant's failure to prove that he had a legitimate expectation of privacy in room 141, we nonetheless find that because of the inconsistent positions the government has taken at trial and on

appeal concerning appellant's alleged disclaimer of knowledge of the key,[1] the government has lost its right to challenge appellant's standing. At the suppression hearing, the government argued that because appellant disclaimed knowledge of the key which he possessed, he must have been in wrongful possession of the key and therefore had burglarized room 141. At trial, the government successfully argued that because appellant had possession of the key, he had dominion and control over room 141 and therefore had constructive possession of the cocaine seized from the room. Now on appeal, the government argues that because appellant disclaimed knowledge of the key, he abandoned the key and could not therefore have a legitimate expectation of privacy in room 141.

▆ Under certain circumstances a disclaimer of an interest in property may constitute an abandonment. *United States v. Veatch*, 674 F.2d 1217, 1221 (9th Cir. 1981) (listing cases holding that disclaimer of interest in property may constitute an abandonment), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982). "The very notion of abandonment ... implies a renunciation of any reasonable expectation of privacy." *United States v. Alden*, 576 F.2d 772, 777 (8th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978). However, abandonment is a question of fact " 'based generally upon a combination of action and intent.' " Consequently, the district court's finding of abandonment will not be overturned on appeal unless clearly erroneous." *Id.* (citation omitted). In this case, whether appellant's disclaimer of knowledge of the key at the time of the search constituted an abandonment was never presented to the district court. In fact, the district court found that although appellant disclaimed knowledge of the key, he still possessed it. A leading commentator has cautioned that "[a]bandonment must be distinguished

---

1. We note that it is unclear from the suppression hearing transcript whether Diaz's disclaimer of the key was made on behalf of appellant or whether appellant acquiesced in Diaz's disclaimer of the key. For purposes of this opinion we have assumed without deciding that appellant also disclaimed an interest in the key to room 141.

from a mere disclaimer of a property interest made to the police prior to the search, which under the better view does not defeat standing." 3 W. LaFave, Search & Seizure § 11.3, at 548–49 (1978).

In *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Supreme Court was faced with a somewhat similar situation. The defendant was arrested at the home of a third party and filed a pretrial motion to suppress evidence seized from the home. The government did not challenge his standing at the suppression hearing. At trial the government argued that the defendant had sufficient connection with the house to support constructive possession of the seized drugs. Before the Supreme Court, the government, however, asserted that the defendant lacked standing to challenge the search. The Court stated that "[t]he Government ... may lose its right to raise factual issues of this sort ... when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during litigation." *Id.* at 209, 101 S.Ct. at 1646. The Court concluded that the government had lost its right to challenge standing because, among other things, it had failed to challenge standing at the suppression hearing, had argued at trial that the defendant had a sufficient connection with the house to support a constructive possession, and had acquiesced in court rulings characterizing the house as the defendant's residence. *Id.* at 211, 101 S.Ct. at 1647. Similar factors are also present in this case.[2]

We believe that the government should not be permitted to use at the suppression hearing appellant's alleged disclaimer to support a warrantless entry, then argue at trial that appellant's possession of the key supported constructive possession of the cocaine, and now on appeal argue that the disclaimer constituted abandonment to defeat an expectation of privacy. *See United States v. Issacs*, 708 F.2d 1365, 1368 (9th Cir.) ("[The defendant's] denial of ownership should not defeat his legitimate expectation of privacy in the space invaded and thus his right to contest the lawfulness of the search when the government at trial calls upon the jury to reject that denial."), *cert. denied*, — U.S. —, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983), *citing United States v. Ross*, 655 F.2d 1159, 1165 (D.C. Cir.1981) (banc), *rev'd on other grounds*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

On appeal appellant argues that the government did not demonstrate that the warrantless search of the hotel room was justified by an exception to the warrant requirement. The Supreme Court has recently stated that "exceptions to the warrant requirement are 'few in number and carefully delineated,' and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, — U.S. —, —, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984), *citing United States v. United States District Court*, 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972). Appellant characterizes the district court's findings as allowing the search under the exigent circumstances exception to the search warrant requirement. " 'Exigent circumstances' have traditionally been found in those crisis situations when there is compelling need for official action and no time to secure a warrant." *United States v. Irizarry*, 673 F.2d 554, 557 (1st Cir.1982). "In applying the exigent circumstances doctrine, the burden is on the [government] to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed." *United States v. Selberg*, 630 F.2d 1292, 1295 (8th Cir.1980). "One exigent circumstance that may justify entry without a

---

2. *Compare United States v. Anderson*, 663 F.2d 934, 938–39 n. 4 (9th Cir.1981) (no waiver of standing because government challenged standing at the suppression hearing); *United States v.*

*Hansen*, 652 F.2d 1374, 1381–83 (10th Cir.1981) (no waiver of standing because government had not made contrary assertions in the district court).

warrant is when the police 'reasonably believe that a person within is in need of immediate aid.'" *Id., citing Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Here, appellant argues that the police officers did not have a reasonable belief that he had committed a burglary in room 141 and had injured someone but rather that the officers suspected that room 141 contained drugs. Appellant asserts that once the police arrested him and were in possession of the key, the officers should have applied for a search warrant. We agree. At the time the officers arrested appellant there was no burglary "loot" in the room; there were no weapons; and appellant did not resist arrest. At the time of the arrest the officers had been informed by the motel manager that the activity in room 244 was connected to room 141. The officers may have believed that evidence of drug activity also existed in room 141. However, "[m]ere fear or apprehension alone that evidence will be destroyed will not justify a warrantless entry of a private home" or, in the present case, a motel room. *United States v. Perez,* 700 F.2d 1232, 1237 (8th Cir.1983). After reviewing the record, we conclude that all the facts available to the police in this case did not justify a warrantless entry.[3]

Accordingly, the judgment of the district court is reversed and remanded for proceedings consistent with this opinion.

---

**3.** Apparently, the district court believed that the warrantless search of room 141 was proper as a search incident to an arrest. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, the scope of a search incident to an arrest is limited to the arrestee's "person and the area from within which he might have obtained a weapon or something that could have been used as evidence against him." *Id.* at 768, 89 S.Ct. at 2043. Clearly, the warrantless search of room *141* exceeded the bounds of a permissible search incident to an arrest of appellant in room *244.*