In light of the afore-referenced reasons, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

UNITED STATES of America, Plaintiff,

v.

Mark SHERRY, Defendant.

No. 4:CR95–3025.

United States District Court, D. Nebraska.

Sept. 1, 1995.

David R. Stickman, Federal Public Defender's Office, Omaha, NE, for Mark Sherry.

Sara E. Fullerton, Lancaster County Attorney's Office, Lincoln, NE, for U.S.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the Magistrate Judge's Report and Recommendation (filing 25) and the objections to the Recommendation (filings 26, 27), filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the Report and Recommendation to which objections have been made. Inasmuch as Judge Piester has fully, carefully, and correctly found the facts and applied the law, I need only state that the Recommendation (filing 25) should be generally adopted, Defendant's objections to the Recommendation (filings 26) should be denied, and Defendant's motion to suppress (filing 11) should be denied.

But I also find and conclude, after de novo review, that the government's objections (filing 27) should be sustained. While I agree with Judge Piester that as a general matter it would be unreasonable for a law enforcement officer to conclude that a hotel manager has the authority to consent to the search of a rented motel room without something more (filing 25, at 12), I disagree with Judge Piester that such a factual pattern was presented to the officers in this case.

Rather, the undisputed evidence is that the hotel night manager, after being carefully questioned by the police officers, told the officers that he had authority to consent to a search of the room because it

was the policy of the hotel to take possession of such a room when the occupants of a room had been arrested. Specifically, the manager told the officers that it was the "policy that the room be secured and that no one be allowed back into the room, that the room reverted back to the control of the motel." (Tr. 91:11–14). Indeed, the evidence reveals that the manager came to the room "on his own accord," without being asked to come to the room by the police. (Tr. 90:14–16). When the manager arrived at the room, he announced to the officers that he was going to put "a separate locking device on the doorknob to ensure that no one could return to the room." (Tr. 91:2–4).

As a consequence, it was reasonable as a matter of fact for the police officers to take the manager's statement as a factually accurate description of the rental arrangement that existed between the proprietor of the hotel and the tenants of the hotel. Indeed, Nebraska law would not appear to prohibit such an arrangement. *See, e.g.,* Neb.Rev. Stat. Chapter 41 (Reissue 1993) (indicating that general statutory provisions previously found in Article 1 regarding hotels and inns were repealed in 1981 and setting forth in Article 2 only liability limitations).

Thus, this is *not* a case where the officers mistakenly assumed that the law *generally* allows a landlord to search a tenant's premises simply because the room is rented. Rather, this is a case where the officers were confronted with a specific statement from the landlord that the rental arrangement allowed the proprietor to take possession of the room and bar the tenant and anyone else from reentry because of the arrest of the tenants. Moreover, this statement would have appeared to be especially reliable to the officers since the manager was going to take possession and control of the room regardless of the action of the police officers, put a special locking device on the door, and bar reentry into the room by the tenants.

Judging these facts from an objective standard—would the facts available to the officer warrant an officer of reasonable caution to believe that the manager had authority over the premises—I conclude that the search based upon the manager's consent was valid because the officers reasonably believed that the manager had the authority to consent to the search given the specific policy articulated by the manager and his announced intention to take control and possession of the room regardless of the action of the police officers. *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).[1]

Accordingly,

IT IS ORDERED:

1. the Magistrate Judge's Recommendation (filing 25) is adopted as modified herein;

2. Defendant's objections to the Recommendation (filing 26) are denied;

3. the government's objection to the Recommendation (filing 27) is sustained; and

4. Defendant's motion to suppress (filing 11) is denied.

**REPORT and RECOMMENDATION**

PIESTER, United States Magistrate Judge.

Pending before the court is Defendant Sherry's ("defendant") motion to suppress. (Filing 11.)[1] For the reasons discussed more fully below, I shall recommend that the motion be denied.

1. The question of whether or not the officers had a right to rely upon the consent does not turn on whether the tenant may have had a reasonable expectation of privacy in the room for purposes of standing to challenge the search. A tenant may have a reasonable expectation of privacy in a room for purposes of determining standing to challenge a police search of the room, while at the same time the landlord also possesses authority to consent to a search notwithstanding the tenant's expectation of privacy. Put another way, one person may have an expectation of privacy that confers standing, while at the same time another person may have the right and power to authorize (or apparently authorize) the invasion of the first person's privacy. The two concepts—standing to object and authority to consent—are different and ought not be confused. This confusion should especially be avoided where the issue is whether the officers reasonably believed that a party had "apparent" authority to consent.

1. A hearing was held June 1, 1995, after which the parties were permitted to submit briefs. The matter was submitted as of June 21, 1995.

On March 16, 1995 defendant was indicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant has filed a motion to suppress all evidence obtained from a search of Unit # 322 of the Residence Inn, Lincoln, Nebraska December 5, 1994. (*See* Filing 11.) On May 31, 1995 the court held a hearing on the motion. The government called three witnesses: Valerie Deahn, Cindi Arthur and Mike Garnett. Defendant presented no evidence.

## FACTS

On December 5, 1994 Lincoln Police Department Officer Valerie Deahn received information from her supervisor Captain Rowe of narcotics activity at the Residence Inn in Lincoln, Nebraska. At about 2:45 p.m. Deahn met with the day manager of the Residence Inn, Cliff Repka, who said that Unit # 322 had made 20–30 local phone calls over the last two days, each from one to four minutes long. This was unusual since the renter is charged fifty cents for each such call. The room was rented by an unidentified person on defendant's credit card.

Deahn also spoke with two maids at the Residence Inn, as well as Repka's assistant. The assistant said it was unusual to extend a room rental day-to-day as had been done in Unit # 322; the room had first been registered on December 3rd. The maids explained that on December 4th the unit had not been cleaned, at the occupants' request. Earlier that day (the 5th) the maids reported that the trash in Unit # 322 had already been emptied when they arrived to clean the room, and that the occupants would not allow them access to the second floor area.[2] Additionally, one of the occupants followed the maid around as she cleaned the first floor area. The maid said that while she was cleaning she had spotted an unemployment card with the name "Henry Bauer" on it. "Connie," one of the maids, also showed Deahn some copper mesh shaped into a cylinder found in Unit # 322, and further explained that she and another maid had seen some broken glass tubing and some "white powder" on the coffee table in Unit # 322.

After receiving this information Deahn called for further assistance from the narcotics unit, including Officers Arthur and Gambrell. While waiting for the assistance to arrive, Deahn took up surveillance of Unit # 322. Deahn saw a white male with short brown hair and a blue ski jacket go to an area of Unit # 322; the male was later identified as Henry Bauer. Deahn also saw a black male (later identified as Eldred Dightman) drive up in a Gold Nissan and walk up to Unit # 322 carrying a laundry basket.

After assistance arrived from the narcotics unit, Deahn, Arthur and others obtained from the manager the key to Unit # 414, which provided a view of the front door area of Unit # 322. Arthur was able to visually identify defendant, Bauer, Dightman and Heidi Bell.[3] Arthur was aware of a Crimestoppers report that Bauer was involved in narcotics activity. A warrant check revealed that both Bauer and defendant had outstanding warrants, Bauer for failure to appear and defendant for discharging a firearm. A vehicle check was performed on the Gold Nissan, which revealed that it was a rental car from Enterprise Rent–A–Car, rented by Henry Bauer on defendant's credit card. Unit # 322 was surveilled from 7:45 p.m. until approximately 10:45 p.m.

At some point prior to 10:15 p.m. the decision was made to make contact with the occupants of Unit # 322. Deahn testified that it was her understanding that contact would be made with Unit # 322 and that defendant would be arrested on his outstanding warrant if he identified himself. At about 10:15 p.m. Arthur made a phone call to Unit # 322 stating that the occupants should leave because the police were on the way. At about 10:45 p.m. Bauer and Dightman exited Unit # 322 and were arrested outside. Dightman told Detective Garnett that defendant was still in the room; Garnett testified that he was aware of defendant's outstanding misdemeanor arrest warrant.

2. Unit # 322 is not a typical motel unit, but is instead an apartment-like suite incorporating a "loft" arrangement upstairs.

3. Dightman had left the unit and later returned with Bell.

Garnett, Arthur and Gambrell approached Unit # 322, knocked on the door and defendant answered; defendant was standing just inside the door to the room, with the officers standing just outside. (*See* Tr. at 64:14–16.) Garnett identified himself and asked defendant if he was Mark Sherry; defendant responded that he was. Garnett asked defendant for identification, which defendant produced. Garnett advised defendant of the outstanding arrest warrant. Defendant acknowledged the warrant and "took a step back." Garnett testified that he interpreted defendant's "step back" as "non-verbal communication to step in, and I did." (*See* Tr. 92:24–93:7.)[4] Garnett then stepped inside Unit # 322 and placed defendant under arrest, patting defendant down and handcuffing him; Arthur and Gambrell followed. Officer Deahn was called into Unit # 322 to assist. Garnett asked defendant for permission to search Unit # 322, which defendant refused. Garnett asked if there was anyone else in the room, and defendant said no. Defendant's fannypack was removed, handed to Arthur, and searched, where a substance resembling cocaine was found.

After Deahn entered Unit # 322 shortly thereafter, she heard a noise from the upstairs area. Knowing that there was still a female inside the motel room who had been seen entering Unit # 322 but never leaving, and concerned for officer safety, Deahn and Gambrell proceeded upstairs to investigate. Deahn testified that she was aware the officers had no consent to search the room. When Deahn and Gambrell arrived upstairs they found a white female exiting the upstairs bathroom; Gambrell asked for identification and recognized the female as Heidi Bell. Gambrell identified herself and Deahn as police officers, and apparently asked Bell to come downstairs. At some point a warrant check was run on Bell and an outstanding warrant for failure to appear was discovered, and Bell was arrested and subsequently searched. (*See* Tr. 26:24–27:17.) Bell was allowed to retrieve some personal items (shoes, leather jacket and fannypack) before going downstairs. Officer Gambrell accompanied Bell, and Deahn stood nearby. While waiting on the top stair of the Unit waiting for Bell to retrieve her belongings, Deahn observed in plain view on the bathroom sink outside the restroom glass tubing and a bong. (*See* Tr. 25:6–26:7.)

During the arrests the night manager of the Residence Inn arrived, and Garnett told him that four persons had been arrested. The manager advised Garnett that it was the policy of the Residence Inn to assume control and secure the room under such circumstances. Garnett then asked the manager for permission to search Unit # 322, which the manager granted. Garnett and Arthur testified that no search was conducted prior to the manager's consent. The subsequent search yielded a playing card with white residue on it, and two closed duffel bags containing certain clothes, copper mesh cylinders and packages of white powder resembling cocaine. One duffel bag was located on upstairs bathroom floor and the second was in an upstairs closet. No search warrant was ever obtained. Deahn testified that the issue was discussed with Garnett, but it was felt that there were not enough facts to justify a warrant. Deahn also testified that other than Arthur's Crimestoppers information on Bauer, there were not any independent reports of narcotics activity with respect to Unit # 322.

## DISCUSSION

Citing *Laing v. United States,* 891 F.2d 683 (8th Cir.1989), defendant argues that the search of Unit # 322 was pretextual, and that no exigent circumstances existed to justify the search because the officers knew the night manager had a device to secure the room until a warrant could be obtained. Plaintiff responds that the initial search of the motel room was proper as a protective sweep incident to defendant's arrest, and al-

4. However, Arthur (who was standing beside Garnett at the time) did not answer whether she saw defendant take a "step back," (*see* Tr. 74:7–11), and was not asked that question again. Deahn was watching the events from the surveillance room and was unable to recall whether defendant stepped outside Unit # 322 (*see* Tr. 33:17–20); she was not asked whether defendant took the "step back." Defendant presented no additional evidence nor testified on the circumstances of the alleged "step back."

ternatively that the challenged evidence would have been inevitably discovered.

First, it is important to recognize that as a general matter, a motel room occupied as a temporary residence receives the same constitutional protection as a person's home. Thus, the searches of defendant's motel room are subject to the Fourth Amendment's [5] general prohibition of warrantless searches, as well as the limited exceptions to that warrant requirement recognized by the Supreme Court. *See United States v. Foxworth,* 8 F.3d 540, 544 (7th Cir.1993), *cert. denied,* ––– U.S. –––, 114 S.Ct. 1414, 128 L.Ed.2d 85 (1994); *United States v. Baldacchino,* 762 F.2d 170, 175–76 (1st Cir.1985); *United States v. Bulman,* 667 F.2d 1374, 1383–84 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); *cf. Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964).

There is little question that defendant was lawfully arrested on his outstanding warrant for discharging a firearm, or that the contemporaneous search of his fannypack within his area of "immediate control" was justifiable as a protective search incident to a lawful arrest under the principle of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The issue is therefore the validity of the two subsequent searches: the "sweep" of the upstairs area of Unit # 322 which eventually led to the discovery of drug paraphernalia in plain view, and the subsequent full-blown search of Unit # 322 after consent was obtained from the night manager.

While defendant correctly recognizes that an arrest may not be used as a pretext to search for evidence, *Laing,* 891 F.2d at 685 (quoting *United States v. Lefkowitz,* 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932)), I am not convinced that defendant's arrest was pretextual. In *Laing,* the defendant was arrested (for an outstanding traffic violation) in the parking lot of a motel and then escorted to a nearby surveillance motel room where he was asked (and gave) written consent to search his adjacent motel room. The court held that defendant's arrest for the traffic violation "had no relation or purpose regarding the subsequent search for drugs [in the motel room]." *Id.* at 686. "No purpose was served by searching appellant's motel room concerning his arrest on the traffic warrant." *Id.*[6]

Here, the evidence shows that Officer Garnett stepped inside Unit # 322 based on defendant's "step back," which Garnett interpreted as implicit consent to enter. Officer Arthur appears to have remained with Garnett just inside the door during that time. Standing just inside the doorway, in light of both defendant's non-verbal consent to step in and the extremely cold weather outside (*see* Tr. 35:25; 65:11–12), was not unreasonable under the circumstances. Officers Gambrell and Deahn, however, do not appear to have been motivated by defendant's "step back" or the inclement weather outside, but rather out of concern for officer safety. That is, it appears Gambrell and Deahn were prepared to do a protective sweep of at least the first floor of Unit # 322 even before they heard the noise coming from the second floor area because of their suspicions of a remaining female occupant inside. (*Cf.* Tr. 57:21–58:13.)

Bearing in mind Gambrell's and Deahn's knowledge that a female had entered Unit # 322 but had not been seen exiting, as well as defendant's untruthful answer to Garnett that no one else was in the room,[7] such a

5. The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

6. Although thus finding the search to be pretextual, the court eventually upheld the search on the basis of defendant's voluntary consent. *See id.* at 686.

7. Defendant's counsel's contention at the hearing that defendant's answer to Garnett's question was truthful because Unit # 322 is arguably "two rooms"—a downstairs area and an upstairs loft area—stretches credulity and common sense.

cursory protective sweep was justified. That justification was amplified when Deahn and Gambrell heard a noise from the upstairs area, and they were justified in exploring the source of that noise. *Cf. Maryland v. Buie,* 494 U.S. 325, 337, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990). ("Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.") Once upstairs, the drug paraphernalia was in plain view while Heidi Bell was allowed to collect her personal belongings; the officers were not required to avert their eyes once lawfully in that area. Thus, in contrast to *Laing,* the upstairs "search" culminating in the plain view of drug paraphernalia did serve a purpose—a protective sweep based on knowledge that an individual was still within Unit # 322 as well as a noise from the upstairs area not visible from the lower level.

While it is clear that the officers' interest in Unit # 322 was not defendant's outstanding arrest warrant for discharging a firearm, it does not appear that defendant's arrest was executed in an effort to surreptitiously gain entry into Unit # 322 and search for narcotics. The officers could have entered Unit # 322 and arrested Bauer and defendant on their outstanding warrants (after proper notice) if they had chosen to do so. *See, e.g., United States v. McConnell,* 903 F.2d 566, 569 (8th Cir.1990) (entry into hotel room (where drugs found in plain view) justified where officer intended to arrest occupant for use of a false driver's license in registering for hotel), *reh denied,* (July 31, 1990), *cert. denied,* 498 U.S. 1106, 111 S.Ct. 1011, 112 L.Ed.2d 1093 (1991). Instead, the officers made a call to Unit # 322 announcing that the police were coming in an apparent effort to lure the occupants from the unit. (*See* Tr. 54:23–55:7.) That tactic worked with respect to Bauer and Eldred Dightman, who were arrested outside. There is nothing in the record suggesting that defendant would not have been similarly arrested outside had he exited with Bauer and Dightman. The officers' apparent intent was to arrest defendant as he exited.

Just as an officer's additional "underlying intent or motivation" does not render an otherwise valid traffic stop pretextual, *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995) (citing *United States v. Cummins,* 920 F.2d 498, 500–1 (8th Cir.1990), *reh denied* (Jan. 17, 1991), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448, (1991)), the otherwise valid arrest of defendant on his outstanding warrant just inside his motel room should not be considered pretextual merely because the officers also had suspicions that defendant was engaged in narcotics activity. An objective assessment of the officers' actions here leads me to the conclusion that defendant's arrest within his motel room was not pretextual, and the officers' presence on the second floor of Unit # 322 where they found drug paraphernalia in plain view was justified as a protective sweep of the premises.

The closer question is the validity of the subsequent search of Unit # 322 on the consent of the motel night manager. Citing *United States v. Morales,* 737 F.2d 761 (8th Cir.1984), defendant argues that once he was arrested and the unit protectively swept, the officers should have locked the unit and obtained a search warrant. In *Morales,* officers were investigating suspected narcotics activity at a Days Inn motel, including an unusual incoming phone call pattern to two rooms, # 244 and # 141. Accompanied by the motel's night auditor, officers knocked and announced their presence at # 244 and were allowed to enter, where drug paraphernalia was in plain view. The occupants were arrested, and one was observed placing his hand under a cushion. An officer investigated and found the key to # 141 under the cushion. The occupant claimed no knowledge about # 141. After inquiring at the front desk as to whom # 141 was registered to (not one of the occupants of # 244), the officers knocked on # 141 and, receiving no answer, entered and searched the room, finding narcotics, cash, a weapon and drug paraphernalia.

The Eighth Circuit found the search unconstitutional, explaining:

> The Supreme Court has recently stated that "exceptions to the warrant requirement are 'few in number and carefully delineated,' and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984), citing *United States v. United States District Court,* 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972). Appellant characterizes the district court's findings as allowing the search under the exigent circumstances exception to the search warrant requirement. " 'Exigent circumstances' have traditionally been found in those crisis situations when there is compelling need for official action and no time to secure a warrant." *United States v. Irizarry,* 673 F.2d 554, 557 (1st Cir.1982). "In applying the exigent circumstances doctrine, the burden is on the [government] to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed." *United States v. Selberg,* 630 F.2d 1292, 1295 (8th Cir.1980).
>
> "One exigent circumstance that may justify entry without a warrant is when the police 'reasonably believe that a person within is in need of immediate aid.' " *Id.,* citing *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Here, appellant argues that the police officers did not have a reasonable belief that he had committed a burglary in room 141 and had injured someone but rather that the officers suspected that room 141 contained drugs. Appellant asserts that once the police arrested him and were in possession of the key, the officers should have applied for a search warrant. We agree. At the time the officers arrested appellant there was no burglary "loot" in the room; there were no weapons; and appellant did not resist arrest. At the time of the arrest the officers had been informed by the motel manager that the activity in room 244 was connected to room 141. The officers may have believed that evidence of drug activity also existed in room 141. However, "[m]ere fear or apprehension alone that evidence will be destroyed will not justify a warrantless entry of a private home" or, in the present case, a motel room. *United States v. Perez,* 700 F.2d 1232, 1237 (8th Cir.1983). After reviewing the record, we conclude that all the facts available to the police in this case did not justify a warrantless entry.

*Id.* at 764–65. In an accompanying footnote the court rejected the district court's conclusion that the search was justified as a protective search incident to arrest under *Chimel, supra,* since the search of # 141 was clearly beyond the "person and the area from within which he might have obtained a weapon or something that could have been used as evidence against him." *Id.* at 765 n. 3 (quoting *Chimel,* 395 U.S. at 768, 89 S.Ct. at 2043.)

Here, it is clear not only that no warrant to justify the search of Unit # 322 existed, but also that prior to the arrests the officers doubted they had probable cause to secure such a warrant. (*See* Tr. 38:22–23.) Unlike *Morales,* plaintiff does not (and indeed could not) seek to justify the warrantless search on the basis of the exigent circumstances exception to the warrant requirement, but rather, relies on the consent exception. (*See* Plaintiff's Brief, at 8–11.) Plaintiff argues that the officers reasonably relied on the consent of the Residence Inn night manager to consent to the search of Unit # 322. The first two cases relied upon by plaintiff, *Illinois v. Rodriguez,* 497 U.S. 177, 183, 110 S.Ct. 2793, 2798, 111 L.Ed.2d 148 (1990) and *United States v. Brokaw,* 985 F.2d 951, 954 (8th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 300, 126 L.Ed.2d 249 (1994) are inapplicable. Those cases involved the "apparent authority" doctrine: that the validity of a third-party's consent to a search may be determined on the apparent authority of the consenting party at the time of the search, rather than the subsequently ascertained actual authority. 3 Wayne R. LaFave, *Search and Seizure* § 8.3(g), at 261 (1987). *Rodriguez* adopted the "apparent authority" doctrine, which had been increasingly relied upon by lower courts for years. *Brokaw* is

simply an example of an application of that doctrine.

Importantly, however, the apparent authority doctrine is limited to mistakes of fact, not law. *See* LaFave, *supra,* at § 8.3(g), at 262 and n. 6. Thus, for example, the apparent authority doctrine would not validate an officer's erroneous *legal* belief that landlords are generally authorized to consent to a search of a tenant's premises. *See United States v. Brown,* 961 F.2d 1039, 1041 (2nd Cir.1992) (as discussed by LaFave, at § 8.3, at 83–84 (1995 pocket part)); *see also United States v. Welch,* 4 F.3d 761, 764–65 (9th Cir.1993) (recognizing mistake of fact-law distinction); *United States v. Salinas-Cano,* 959 F.2d 861, 865–66 (10th Cir.1992) (same); *United States v. Whitfield,* 939 F.2d 1071, 1073–74 (D.C.Cir.1991) (same); *cf. United States v. Sanchez,* 32 F.3d 1330, 1335 (8th Cir.1994) (quoting *Salinas-Cano* that "the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law ... [i]n other words, '*Rodriguez* ... applies to situations in which an officer would have had valid consent to search if the facts were as he reasonably believed them to be' "), *cert. denied,* — U.S. —, 115 S.Ct. 1119, 130 L.Ed.2d 1082 (1995).

The apparent authority doctrine has no application here, where the officers were not arguably mistaken as to any essential facts, i.e. there was no question that the consenting party was the Residence Inn night manager and that the room was currently rented by the defendant. *See* LaFave, *supra,* at § 8.3(g), at 262. Rather, the issue is an arguable mistake in law, i.e. the officers' belief in the Residence Inn's night manager's authority to consent to the search of a registered guest, *see id.* at § 8.3(g), at 262 and n. 6, and apparently the mistaken belief that under Nebraska law an arrest automatically terminates a motel tenancy contract. Since there is no mistake of fact here, the apparent authority doctrine is inapplicable.

The third case relied on by plaintiff, *United States v. Huffhines,* 967 F.2d 314 (9th Cir.1992), is likewise inapplicable. *Huffhines* represents nothing more than a recent example of the "well-settled rule that a guest in a hotel or motel loses his reasonable expectation of privacy and consequently any standing to object to 'an unauthorized seizure of the premises' after his rental period has terminated." *United States v. Ramirez,* 810 F.2d 1338, 1341 (5th Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987) (collecting cases and quoting *United States v. Jackson,* 585 F.2d 653, 658 (4th Cir.1978), (quoting *United States v. Parizo,* 514 F.2d 52, 54–55 (2d Cir.1975))); *see LaFave, supra,* at § 8.5(a), at 293. There is no allegation or evidence that defendant's rental agreement had expired at the time the night manager consented to the search of his room.

Plaintiff attempts to circumvent this problem by arguing that defendant's agreement had "expired because of misconduct." (Plaintiff's Brief, at 11.) That is, apparently Residence Inn policy provided that a room rented by a person who is arrested reverts back to the control of the motel, and the room is then secured with a special lock preventing anyone from entering and disturbing any potential evidence. (*See* Tr. at 91:5–14.) Yet *Huffhines* and that line of cases says nothing about a rental agreement "expiring" upon a renter's arrest, but rather upon the nonpayment of rent or a failure to renew the rental agreement. *See, e.g., United States v. Rambo,* 789 F.2d 1289, 1295–96 (8th Cir.1986) (hotel employee's consent to search room valid when rental period expired and control reverted to hotel management.)

Plaintiff has offered no authority in support of its apparent argument that a guest loses her expectation of privacy in a motel room upon arrest, rather than termination of her rental agreement by other means. As argued by defendant, while some states have passed statutes so providing, Nebraska has not. (Defendant's Brief, at 5.) In addition, a recent case holds to the contrary. In *Moberg v. State,* 810 S.W.2d 190, 196–97 (Tex. Crim.App.1991), Defendant Moberg was arrested at a motel on a charge of aggravated sexual assault of his teenage daughter. Moberg was taken to the police station, but the police returned to the motel, obtained a consent to search Moberg's room by the motel manager, and searched the room for evidence relating to two unrelated sexual assault

charges.[8] A panel of the court of appeals upheld the search on the inventory search doctrine and the consent exception, but the court *en banc* reversed:

> In support of [its determination that the consent of the motel manager was sufficient to justify the search of Moberg's motel room the panel] relied upon *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *United States v. Rahme,* 813 F.2d 31 (2nd Cir.1987); *United States v. Ramirez,* 810 F.2d 1338 (5th Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987); *United States v. Rambo,* 789 F.2d 1289 (8th Cir.1986); *Voelkel v. State,* 717 S.W.2d 314 (Tex.Cr. App.1986). *It can certainly be gleaned from this compilation of authority the well settled rule that a guest in a hotel or motel loses his reasonable expectation of privacy and consequently any standing to object to any search of the premises once the rental or occupancy period has terminated. In each and every case cited for one reason or another the room was either vacated or the rental period of the room had expired. The occupant had relinquished control of the motel or hotel room and the operator of the motel/hotel was clearly authorized under the particular circumstance to consent to the search of the vacated room.* Had the police waited to obtain consent from Tellefeson, the motel manager, after expiration of Moberg's occupancy is a question not before this Court. *The fact is that the officers made a conscious choice not to wait and search the room knowing that appellant was still a guest at the motel in spite of his arrest.* Like in *Stoner, supra,* the appellant did not consent to the search nor did the police have any basis to believe the manager had been authorized by him to permit the police to search the room. *In no tribunal has the State sought to argue the validity of a search or attempt to sustain the search as one contemporaneous with a valid arrest. The State cites no authority to this Court for the proposition that once a guest of a motel is arrested he relinquishes any reasonable expectation of privacy in the room automatically.*

*Moberg,* 810 S.W.2d at 196–97 (emphasis added). Professor LaFave has cited *Moberg* in support of the proposition that "it is clear that a guest loses his reasonable expectation of privacy in the room only if 'the rental or occupancy period had terminated,' and that *the fact of arrest does not by itself produce such termination.*" LaFave, *supra,* at § 8.3, at 92 and n. 32.1 (1995 pocket part) (emphasis added).

I find the reasoning of *Moberg* persuasive, and in the absence of authority to the contrary I agree with its holding. Like the Eighth Circuit in *Morales, supra,* I believe that once the officers were in possession of defendant's motel room, they should have secured the room (which the night manager was apparently prepared to do) and apply for a search warrant. As in *Moberg,* here the officers "made a conscious choice not to wait," and searched the room when defendant was still a guest at the motel in spite of his arrest. This choice was not compelled by any impending exigency or emergency, as there is nothing to suggest that had the officers so requested the night manager would not have secured the premises until a warrant was obtained or until the rental agreement had expired. Instead, the officers acted on belief of the validity of the night manager's consent.[9] I conclude that the Fourth Amendment does not support such a choice.

Nevertheless, I conclude that the evidence obtained from the unconstitutional search should not be excluded under the inevitable discovery doctrine of *Nix v. Williams,* 467 U.S. 431, 440–50, 104 S.Ct.

8. The court noted that although the record revealed that an "evidentiary search warrant" had been obtained for the room prior to the search, at the suppression hearing the district attorney, "[i]n a surprising turn of events," relied upon the inventory search doctrine and consent rather than the warrant in support of the search. *Moberg,* 810 S.W.2d at 192.

9. Plaintiff has cited no legal authority in support of its assertion that "[t]he manager, acting as the motel's agent, possessed the authority to consent to a search of the room at that time. This authority was greater than that of the Defendant's because the Defendant no longer had any expectation of privacy in the room." (Plaintiff's Brief, at 11.)

2501, 2507–12, 81 L.Ed.2d 377 (1984). That doctrine allows for the government to show by a preponderance of the evidence that the evidence seized would have been discovered in any event by lawful means. *United States v. Halls,* 40 F.3d 275, 276 (8th Cir.1994) (citing *Nix,* 467 U.S. at 444, 104 S.Ct. at 2509), *reh denied* (Dec. 13, 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1721, 131 L.Ed.2d 579 (1995). Plaintiff rightly directs the court's attention to several facts arguably supportive of a finding of probable cause for a search warrant:

—the arrest of four individuals, two of whom had drug paraphernalia on their persons, and two of whom were in possession of a suspected controlled substance;

—an unusual motel room rental pattern for Unit # 322, as well as an unusual pattern of incoming phone calls;

—the maids' observations of broken glass, wire mesh and white powder on a coffee table of Unit # 322, as well as a suspicious conduct of the occupants while the maids were cleaning; and

—drug paraphernalia in plain view in the second floor area of Unit # 322 during a lawful protective sweep of that area [as discussed above].

(See Plaintiff's Brief, at 13.) Additionally, Officer Arthur was aware of a prior Crimestoppers report that Henry Bauer—who was identified by Arthur going inside Unit # 322 and who had rented a vehicle with defendant's credit card—had been involved in narcotics activity. The preponderance of the evidence shows that had a search warrant been sought based on these facts, it would have been granted, and the evidence in question discovered. The doctrine is therefore applicable and the evidence should not be excluded. I shall therefore recommend that defendant's motion to suppress be denied.

**IT THEREFORE HEREBY IS RECOMMENDED** to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motion to suppress (filing 11) be denied in all respects.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.