# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4286

_____

United States of America,       *

                    *

        Appellee,       *

                    *    Appeal from the United States

v.                 *    District Court for the

                    *    District of Minnesota.

Andre Ricardo Pierson,       *

also known as Deandre Norris,       *

                    *

        Appellant.       *

_____

Submitted: May 9, 2000

Filed: July 26, 2000

_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Andre Ricardo Pierson appeals from a final judgment[1] finding him guilty, pursuant to a written plea agreement, of aiding and abetting possession with intent to

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Pierson was sentenced to 235 months in prison. We affirm.

## I.    BACKGROUND

On the morning of September 18, 1995, Detective David Sebesta of the Bloomington, Minnesota, Police Department received a tip from a confidential reliable informant that a man named "Dre" was staying in room 243 of the Exel Inn in Bloomington. The informant told Sebesta that Dre and another individual would be picking up a female courier carrying one-half of a kilo of crack cocaine at the Minneapolis/St. Paul airport later that day. According to the informant, Dre would be driving either a white Buick or a turquoise Chevrolet Z28. The informant also told Sebesta that Dre had previously been stopped at the airport, at which time airport officials had seized $7000 from him. Sebesta confirmed that a Deandre Norris[2] was registered to room 243 and that airport officials had previously seized $7000 from him. A turquoise Z28 was observed in the parking lot of the hotel.

Officers then set up surveillance across the hall from room 243. They observed two males, later identified as Pierson and Jimmy Brown, exit room 243 and drive away in the Z28. Officers followed the vehicle to the airport. There they saw a female, later identified as Sherdana Conklin, approach the vehicle. She carried a black garment bag. Conklin placed the bag in the hatchback compartment of the car and got in. The

_____

[2]Pierson was originally charged under the name Deandre Norris. It was later determined that his true name is Andre Ricardo Pierson.

officers followed the car back to the hotel, where they observed the three occupants exit the car and engage in conversation. Pierson and Conklin then carried luggage into the hotel, and Brown drove away. Brown was subsequently stopped and arrested. A search of his car failed to reveal any drugs.

Meanwhile, back at the hotel, officers observed Pierson and Conklin enter room 243. Afraid that Brown would try to contact the occupants of the room, the officers decided to arrest Pierson. Sebesta testified that the officers were not sure if Pierson had weapons and thought that confronting him outside the room would be a safer approach. Sebesta then placed a phone call to Pierson's room during which he identified himself as hotel management and requested Pierson to come to the front desk. Officers, waiting in the hall, arrested Pierson when he exited the room and then moved him back into the room.[3] Pierson was handcuffed and advised of his Miranda rights. Conklin was also arrested and handcuffed.

Following the arrest, Pierson was taken to the room across the hall and given a consent-to-search form. He signed the form after officers informed him they would obtain a search warrant if he did not consent. Conklin also signed a consent-to-search

---

[3]The district court noted that there was conflicting evidence presented at the motions hearing on Pierson's exact location at the instant when the officers arrested him. Sebesta testified that Pierson had exited the room, but Pierson testified that he had begun to turn the door knob to exit the room when officers pushed in the door. The district court carefully examined this point both at the motions hearing and in its opinion and concluded that "the court finds the testimony of Sebesta to be more credible than the testimony of defendant." Having reviewed the record, we conclude that the district court's finding was not clearly erroneous.

form. Officers questioned Pierson and Conklin as to the ownership of the luggage in the room. Although, each of them claimed to own certain luggage, both expressly disavowed ownership of the black garment bag. Officers then conducted a search of the bag and discovered two bricks of cocaine base with a total weight of approximately 493 grams.

On October 3, 1995, Pierson, Conklin and Brown were charged with aiding and abetting possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. Pierson failed to appear for arraignment, having fled the jurisdiction. He remained a fugitive until his arrest in California in January 1999. A superseding indictment was filed, adding a third charge of knowingly failing to appear for arraignment in violation of 18 U.S.C. § 3146(a)(1). Pierson pled not guilty and filed pretrial motions to suppress the cocaine base seized in the hotel room as well as his post-arrest statements. The magistrate judge[4] recommended the motions be denied. The district court adopted the recommendation. Pierson then entered a conditional guilty plea to Count I of the superseding indictment,[5] preserving the right to appeal the denial of his motion to suppress the cocaine base, pursuant to Federal Rule of Criminal Procedure 11(a)(2).[6] He was sentenced to 235 months'

_____

[4]The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

[5]The government moved to dismiss Counts II and III at the time of sentencing.

[6]In his brief, Pierson also argues that the district court erred in not suppressing his post-arrest statements. At oral argument, however, Pierson's counsel waived this argument, acknowledging that Pierson's plea agreement specifically precluded Pierson

imprisonment and 5 years supervised release.

On appeal, Pierson argues that: (1) the district court erred in refusing to suppress the evidence seized from the hotel room because the officers' entry into the room was unlawful, and therefore any evidence obtained as a result of such entry is "fruit of the poisonous tree;" and (2) his subsequent abandonment of the garment bag as well as his written consent to search the room was involuntary.

## II.    DISCUSSION

"We review the facts supporting the district court's denial of the motion to suppress for clear error and review de novo the legal conclusions based on those facts." United States v. Glenn, 152 F.3d 1047, 1048 (8th Cir. 1998).

First, we reject Pierson's claim that the officers' entry into room 243 was unlawful. The district court found: (1) Pierson was lawfully arrested without a warrant because he was in a public place; and (2) the officers' subsequent entry into room 243 was supported by exigent circumstances. We agree with both findings. Once Pierson exited his room, the officers were entitled to arrest him without a warrant. See United States v. Wixom, 460 F.2d 206, 209 (8th Cir. 1972) (no arrest warrant needed for arrest outside motel room as long as officer had probable cause to believe felony had been committed). Thereafter, exigent circumstances justified the officers' entry into the

from appealing any pretrial rulings other than the district court's refusal to suppress the cocaine base seized from the hotel room.

room: Pierson was barely outside room 243 when arrested by the officers; Conklin was still in the room with the drugs and was ostensibly aware of the commotion taking place just outside the door; and she could have destroyed the evidence if the officers had decided to wait for a search warrant before entering the room. See United States v. Knobeloch, 746 F.2d 1366, 1366-67 (8th Cir. 1984).[7]

Although the officers' entry into the room was lawful on the basis of exigent circumstances, it does not legitimate the subsequent search of the garment bag. See United States v. Halliman, 923 F.2d 873, 880 (D.C. Cir. 1991) (lawful entry into hotel room based on exigent circumstances does not authorize officers to search the remainder of the room). Such an entry must be "'limited in scope to the minimum intrusion necessary to prevent the destruction of evidence.'" Id. (quoting United States v. Socey, 846 F.2d 1439, 1445 (D.C. Cir. 1988)). Once the officers had Pierson and Conklin under control, there was no reason for the officers to believe that evidence was in imminent danger of removal or destruction. See United States v. Larson, 760 F.2d 852, 855 (8th Cir. 1985). Nor is there any indication that other persons unknown to the officers were thought to be in the room. See United States v. Carter, 854 F.2d 1102, 1107 (8th Cir. 1988).

---

[7]We reject Pierson's assertion that because there was no testimony that entry into the room was motivated by concern that evidence was about to be destroyed, the district court's factual findings regarding exigent circumstances are clearly erroneous. One of the officers testified that entry into the room was necessitated by their awareness that Conklin remained in the room and had to be secured. See Suppression Hearing Transcript at 91. Even if this were not so, we find no clear error in the district court's factual findings which follow from a common-sense assessment of the situation that existed at the time of Pierson's arrest. See Knobeloch, 746 F.2d at 1367 (noting similar assertion by a defendant).

The district court, however, upheld the search of the garment bag on the ground that Pierson lacked standing to challenge the search because he had abandoned the bag by expressly denying its ownership.[8]  We need not reach the abandonment issue because we find Pierson lacks standing to challenge the legality of the search for a more fundamental reason—the garment bag was not his.

Fourth Amendment rights are personal and cannot be asserted vicariously.  See United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994).  A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched . . . has no standing to claim that they were searched or seized illegally."  Id.  A defendant moving to suppress evidence has the burden of showing a legitimate expectation of privacy in the area searched.  See id. "Factors relevant to the determination of standing include:  ownership, possession and/or control of the area searched or item seized;  historical use of the property or item;  ability to regulate access;  the totality of the circumstances surrounding the search;  the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. "  Id.

The record shows that shortly before the time of the events in question, Pierson spoke with Conklin, who was residing in California, and told her that Brown had forgotten his bag at Pierson's apartment.  Pierson asked Conklin to retrieve the bag and

_____

[8]The magistrate judge found that Pierson's consent to search the room was involuntary but  recommended that the motion to suppress be denied because  Pierson had voluntarily abandoned the bag.  The district court did not discuss the issue of consent, focusing instead on an abandonment analysis.

bring it to Minnesota. At his change of plea hearing, Pierson testified that he had asked Conklin to "do somebody a favor, to bring somebody's bag here [to Minnesota]." The record also shows that when Brown dropped off Conklin and Pierson at the hotel, he instructed them to keep the bag and remain in the room, indicating that he would return to pick up the bag. Officer Sebesta also testified at a preliminary hearing that before Pierson signed the consent-to-search form, he specifically asked Sebesta whether it was for his property only that he was giving consent for the search. Only after Sebesta answered in the affirmative did Pierson agree to sign the form. In fact, there is no evidence in the record that Pierson ever testified to a possessory interest in the bag. Although Pierson kept the bag in his hotel room for a short period of time and briefly opened it to handle the bricks of cocaine, we find that such temporary possession, by itself, is not sufficient to establish a legitimate expectation of privacy in its contents. See United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997).

At argument, Pierson conceded he would lack standing to challenge the search if the bag was not his, but argued that because the issue of ownership of the bag was not raised below, it cannot be considered now. We disagree. It is a well-settled principle that we may affirm a district court's judgment on any basis supported by the record. See United States v. Oligmueller, 198 F.3d 669, 671 (8th Cir. 1999).[9] In sum,

---

[9]Nor is this a case where the government has taken contrary positions regarding Pierson's standing. For example, in United States v. Morales, 737 F.2d 761 (8th Cir. 1984), we rejected the government's argument that the defendant lacked standing to challenge the search of a hotel room. We found in that instance that the government had taken inconsistent positions at the suppression hearing, at trial, and on appeal between arguing that the defendant had control over the room and that he had abandoned any expectation of privacy in the room. Here, the government has

we find the record supports a finding that Pierson lacked a privacy interest in the garment bag. Therefore, he has no standing to challenge the legality of its search.

## III.  CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

maintained all along that Pierson lacks standing because he denied ownership of the bag. It now asks us to consider the possibility that he may also lack standing because the bag, in fact, was not his. We do not think these facts fall within the Morales paradigm.  See  Gomez, 16 F.3d at 256-57 (distinguishing government's actions from the Morales case).