[No. A110995. First Dist., Div. Five. Aug. 21, 2006.]

In re FRANK S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
FRANK S., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II. and III.

## COUNSEL

Rachel Lederman for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEMELLO, J.**—Defendant Frank S. contends that his counsel was ineffective for failing to move to suppress evidence discovered incident to his arrest. He argues that the arresting officer's violation of the knock-and-announce rule requires exclusion of the evidence. The claim fails because the United States Supreme Court recently held in *Hudson v. Michigan* (2006) 547 U.S. ___ [165 L.Ed.2d 56, 126 S.Ct. 2159] that violation of the knock-and-announce rule does not justify application of the exclusionary rule. In the unpublished parts of this decision, we also reject defendant's claims that the juvenile court erred in committing him to the California Youth Authority and that the court failed to exercise its discretion in setting the maximum term of confinement.[1]

### PROCEDURAL BACKGROUND

A petition filed in Contra Costa County Juvenile Court alleged that defendant Frank S. (born in October 1987) came within the provisions of Welfare and Institutions Code section 602[2] based on an allegation of possession of marijuana for sale (Health & Saf. Code, § 11359). The petition alleged nine prior sustained offenses for purposes of disposition. The juvenile court sustained the petition.

At the dispositional hearing, the court committed defendant to the California Youth Authority for a maximum term of 132 months.[3]

---

[1] We deny defendant's petition for writ of habeas corpus, case No. A112996, by separate order filed this date.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] The California Youth Authority was renamed, effective July 1, 2005, Juvenile Justice, Department of Corrections and Rehabilitation. (Gov. Code, §§ 12838, subd. (a), 12838.13.) However, for the sake of clarity we will use the designation CYA because that is the designation used below.

## Factual Background

In the afternoon on March 20, 2005, Pittsburg Police Officer Don Pearman was patrolling the El Pueblo neighborhood, an area with a high rate of drug-related crime. As Pearman drove on Ronnie Street, he saw defendant (whom he recognized from numerous previous contacts) walking in his direction on the sidewalk. Defendant was wearing a black jacket bearing sports team emblems. As Pearman drove past, defendant looked away and seemed to try to conceal himself behind a companion.

Pearman suspected that defendant was trying not to be recognized because he was on parole with a condition barring him from being in that area. Pearman had warned defendant in the past that he faced the possibility of arrest if Pearman ever saw him in that area.

Pearman decided against stopping defendant at that point because "he was prone to flee from the police." As Pearman continued driving he called for backup. In his rearview mirror, he observed defendant walk down a driveway on Ronnie Street. Pearman knew that defendant knew persons at that location. Pearman parked, met two other officers, and walked to the house.

The officers approached a sliding glass door on the side of the house. About five minutes had passed since Pearman had last seen defendant. He stood next to the door for 10 to 15 seconds. He heard "a bunch of commotion" that sounded like there were several people on the other side of the door and reached through an opening in the doorway and pulled aside a curtain. He saw defendant sitting on a couch about three feet away.

Pearman entered, arrested defendant, and patted him down for weapons. He did not fully search defendant at that time because the other persons in the house were becoming hostile. At the police station, Pearman discovered in defendant's inner jacket pocket a zip-lock bag containing loose marijuana and a sandwich bag containing 31 smaller bags containing marijuana.

Defendant's defense was that he had borrowed the jacket from his brother without knowing that there was marijuana in one of the pockets. Defendant admitted he had violated the law three days before the day of his arrest when he ran from the police when they tried to search him.

## DISCUSSION

### I. *Ineffective Assistance of Counsel*

The People concede that Officer Pearman violated the knock-and-announce rule in entering the house to arrest defendant. Defendant contends that his trial counsel was ineffective in failing to move to suppress the evidence discovered in the search of his jacket incident to the arrest.

■ "In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211 [135 Cal.Rptr.2d 553, 70 P.3d 981].) Defendant has the burden of establishing ineffective assistance of counsel. (*Ibid.*) Defendant has failed to demonstrate that his trial counsel was deficient in failing to move to suppress.

■ The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the right of persons to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.; *People v. Camacho* (2000) 23 Cal.4th 824, 829 [98 Cal.Rptr.2d 232, 3 P.3d 878].) A similar right is set forth in the California Constitution (Cal. Const., art. I, § 13), but under article I, section 28, subdivision (d), federal constitutional standards govern review of claims seeking exclusion of evidence on grounds of unreasonable search and seizure. (*People v. Camacho*, at p. 830; *People v. Rege* (2005) 130 Cal.App.4th 1584, 1588 [30 Cal.Rptr.3d 922].) In other words, " 'Our state Constitution . . . forbids the courts to order the exclusion of evidence at trial as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the United States Supreme Court.' " (*People v. Camacho,* at p. 830.)

■ The common law "knock-and-announce" rule forms part of the reasonableness inquiry under the Fourth Amendment. (*People v. Martinez* (2005) 132 Cal.App.4th 233, 242 [33 Cal.Rptr.3d 328].) In California, the rule is codified in Penal Code section 844, which states: "To make an arrest . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired." (See also Pen. Code, § 1531 [entry to execute a search warrant].)

■ In *Hudson v. Michigan, supra,* 547 U.S. at p. ___ [126 S.Ct. 2159], the United States Supreme Court considered "whether violation of the 'knock-and-announce' rule requires the suppression of all evidence found in the search." (*Id.* at p. ___ [126 S.Ct. at p. 2162].) The court answered that question in the negative. In framing the issue, the court noted that exclusion of evidence "may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence. Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression." (*Id.* at p. ___ [126 S.Ct. at p. 2164].) Despite a causal connection, exclusion is not required where the relationship between discovery of the evidence and the constitutional violation is sufficiently attenuated. (*Ibid.*) Attenuation can occur when the causal connection is remote or "when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." (*Ibid.*) This is because " '[t]he penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve.' " (*Ibid.*)

■ The Fourth Amendment prohibition on warrantless home searches and arrests protects an individual's interest in shielding his or her person and effects from government scrutiny. (*Hudson v. Michigan, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2165].) Exclusion of the evidence obtained by a warrantless home search or arrest vindicates that right. (*Ibid.*) But the interests protected by the warrant requirement are not implicated in this case. The police were authorized to enter without a warrant because defendant was a parolee who had no legitimate expectation of privacy against warrantless arrests, even in the home. (*People v. Lewis* (1999) 74 Cal.App.4th 662, 671 [88 Cal.Rptr.2d 231].) Defendant does not argue to the contrary.

*Hudson* held that the interests protected by the knock-and-announce rule are quite different from those protected by the warrant requirement and do not include the shielding of potential evidence from the government's eyes. (*Hudson v. Michigan, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2165].) Instead, the court observed that the rule protects human life because "an unannounced entry may provoke violence in supposed self-defense by the surprised resident"; protects property by providing residents an opportunity to prevent a forcible entry; and protects "those elements of privacy and dignity that can be destroyed by a sudden entrance" by giving occupants an opportunity to collect themselves before answering the door. (*Hudson v. Michigan, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2165].) "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a

warrant. Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." (*Ibid.*) The court also concluded that the deterrence benefits of exclusion for violation of the knock-and-announce rule do not outweigh the social costs of exclusion. (*Id.* at p. ___ [126 S.Ct. at pp. 2165–2168].)

Following *Hudson*, we conclude that Officer Pearman's entry in violation of the knock-and-announce rule did not implicate defendant's interest in preventing the government from seeing the drugs in his jacket pocket and exclusion of the evidence is not justified.

■   Defendant's contention that *Hudson* applies only where the police have a search warrant is not persuasive. *Hudson* held that a violation of the knock-and-announce rule does not justify application of the exclusionary rule. (*Hudson v. Michigan, supra,* 547 U.S. at p. ___ [126 S.Ct. at pp. 2162, 2165, 2168]; see also *id.* at p. ___ [126 S.Ct. at p. 2170] (conc. opn. of Kennedy, J.); *id.* at p. ___ [126 S.Ct. at p. 2171] (dis. opn. of Breyer, J.).) The rule turns on the nature of the constitutional violation at issue, not the nature of the police's authority for entering the home. The interest asserted by defendant is that protected by the prohibition on warrantless home searches and arrests, namely, the right to shield one's person and property from the government's scrutiny. (*Id.* at p. ___ [126 S.Ct. at p. 2165].) But violation of the knock-and-announce rule did not implicate that interest. As in *Hudson*, because "the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." (*Ibid.*)[4]

■   Because knock-and-announce violations do not justify application of the exclusionary rule, defendant's counsel below was not ineffective in failing to move to suppress the evidence discovered in defendant's jacket.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] In arguing that *Hudson* is distinguishable, defendant also asserts that "if the officers had knocked and announced themselves, appellant may well have taken off the jacket before his cousin answered the door, and the marijuana would not have been found." However, the propriety of exclusion does not turn only on whether the violation was a "but-for" cause of discovery of the evidence. (*Hudson v. Michigan, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2164].) Moreover, it is likely that the officers could have searched defendant's jacket incident to the arrest unless defendant took it off and put it in an area outside of his immediate control. (See, e.g., *People v. Rege, supra,* 130 Cal.App.4th at pp. 1588–1589.)

*See footnote, *ante,* page 145.

## Disposition

The juvenile court's orders are affirmed.

Jones, P. J., and Simons, J., concurred.

Appellant's petition for review by the Supereme Court was denied December 13, 2006, S146967.