**STATE of Missouri, Respondent,**

v.

**Thomas GIBBS, Appellant.**

**No. WD 66334.**

Missouri Court of Appeals,
Western District.

April 3, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2007.

Application for Transfer Denied
June 26, 2007.

William J. Swift, Appellate Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Thomas Gibbs appeals his convictions following a jury trial for first degree robbery and resisting arrest. Gibbs claims that the trial court erred in admitting certain evidence and certain of his incriminating statements because these were the fruit of an illegal arrest. He also claims that the evidence was insufficient to convict him of resisting arrest.

### Background

On February 16, 2005, at approximately 10:25 a.m., Kim Luetjen was working a lobby window at the U.S. Bank in Sedalia, Missouri. She was approached by a man wearing a blue hooded jacket with yellow trim. The man had his jacket zipped three-quarters of the way up and the hood pulled up over his head. Ms. Luetjen had noticed him earlier because she thought it was odd that he was wearing his jacket with the hood over his head when it was approximately 70 degrees outside that day.

The man handed Ms. Luetjen a note that said "This is a hold up. I have a gun. Hand over the money in the draw [sic]." Ms. Luetjen turned to her drawer, which was behind her, retrieved all of the money in it and gave it to the man. He then left quickly. Ms. Luetjen told her supervisor, Stephanie Carpenter, what had occurred. Ms. Carpenter had also noticed the man because of his unusual dress. The two

women locked the bank doors and called the police.

After speaking to Ms. Luetjen and Ms. Carpenter, the police began a search for the suspect. One officer made contact with a woman who informed him that another woman named Janel Atkins would be able to help find the suspect. Ms. Atkins provided information suggesting that the suspect for which the police were looking was a man named Thomas Gibbs. Ms. Atkins consented to a search of her house for two duffel bags that allegedly belonged to Gibbs. Ms. Atkins also indicated that Gibbs would be using a black bicycle as his transportation.

The black bicycle was found at a local motel. Gibbs had checked into the motel, but was no longer there. Other officers were also in the area asking employees at local businesses if anyone had seen a man matching the suspect's description. Sergeant Nathan Ahern arrived at another motel and spoke to the clerk of the motel. Ahern learned that a man matching the suspect's description had recently checked in to the motel. The clerk gave Ahern a key to the room in which the suspect was staying.

Before going to the room, Ahern flagged down Chief Ted Litschauer in order to obtain his assistance at the motel. Litschauer covered the rear of the motel. Without knocking or announcing his presence, Sergeant Ahern used the key given to him to open the door to the motel room to the extent permitted by the chain lock, about an inch and a half to two inches. Ahern was wearing his police uniform. Ahern could see Gibbs standing at the foot of the bed. Although Ahern did not know Gibbs, he called out the name "Tom." At that point Gibbs ran out of Ahern's sight. Ahern forced the door the rest of the way open. Ahern located Gibbs climbing out of the bathroom window. Most of Gibbs's upper torso was already out of the window by this time. Ahern grabbed Gibbs's legs, but due to Gibbs's weight, Ahern was unable to pull Gibbs back into the room. He instead let Gibbs drop to the ground outside and followed Gibbs out the window. He landed on top of Gibbs. As he landed, he noticed a knife located on the ground next to Gibbs.

Sergeant Ahern told Gibbs to stop resisting, but Gibbs did not comply. Shortly after Gibbs and Ahern dropped out of the window, Chief Litschauer arrived to help. Litschauer was dressed in street clothes, but was wearing a black t-shirt that had the emblem of a badge on it and said "City of Sedalia Police" on the back in large letters. Litschauer testified that it took several minutes to subdue Gibbs. Sergeant Ahern finally used pepper spray on Gibbs in order to subdue his resistance. Once Litschauer and Ahern had handcuffs on Gibbs, he stopped resisting. Litschauer patted Gibbs down and found a wad of money in his left pocket totaling $249, a seven-inch collapsed knife in his right pocket in addition to the one found on the ground, and a glass pipe used for smoking crack cocaine clenched in his hand.

Police transported Ms. Luetjen and Ms. Carpenter to the motel to view the suspect. Each one identified Gibbs as the man who robbed the bank.

At the station, after treatment for the pepper spray, Gibbs was taken to an interrogation room where Officer Prouty read him his *Miranda* rights. At some point Gibbs requested to talk to Officer Stewart, who had transported him to the station. Officer Stewart came to the interrogation room to interview Gibbs. During this interview, Gibbs made incriminating statements about his involvement with the bank robbery. Gibbs informed the officers that he had put the note used to rob the bank

in the pocket of the jacket he wore during the robbery. He also said that he had put the jacket in the back of a pickup truck at the Golden Corral near the bank.

Gibbs was transported to a cell. About ten days later, on the evening of February 27th, Gibbs summoned the correctional officers on duty and informed them that he had forgotten to tell the police earlier that some of the money from the robbery was in his shoe. The officers retrieved Gibbs's belongings from the property room at the jail. They found Gibbs's shoes and searched them, finding $1460 under the sole of the right shoe.

Gibbs was charged by amended information in the Circuit Court of Cooper County with robbery in the first degree and felony resisting arrest. At the jury trial in November 2005, the prosecution presented its evidence. The defense did not put on any evidence. The jury returned a verdict of guilty on both counts. Gibbs now appeals to this court.

### Fourth Amendment Issue

■ When it is asserted that the evidence was obtained through an unlawful search and seizure, the State has the burden of showing that the evidence should be admitted. *See State v. Ricketts,* 981 S.W.2d 657, 659 (Mo.App.1998). Although the findings as to disputed facts are reviewed under the clearly erroneous standard, whether the Fourth Amendment has been violated is a question of law which we review *de novo. Id.*

■ Although Gibbs's arrest was made without a warrant, he does not raise an issue as to the probable cause to arrest him. Instead, he complains about the manner in which he was arrested. He claims that all evidence obtained as a result of this arrest should have been suppressed as "fruit of the poisonous tree" due to the failure to knock and announce before the arrest intrusion. Gibbs complains that the officers violated the privacy rights recognized in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1979), and *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), in their failure to knock and announce their presence at his motel room before attempting to enter. He claims there were no exigent circumstances warranting a "no knock" entry. He asserts that his rights under the Fourth Amendment of the United States Constitution, and under article I, section 15 of the Missouri Constitution were violated.

■ The analysis under the Fourth Amendment is the same as under article I, section 15 of the Missouri Constitution. *Ricketts,* 981 S.W.2d at 660. For purposes of Fourth Amendment analysis, a "no knock" entry is justified if there are exigent circumstances, such as a threat of physical violence, or a reasonable fear that evidence would be destroyed. *Wilson,* 514 U.S. at 936, 115 S.Ct. 1914. The courts have also determined that, despite its unconditional language, section 544.200 also makes an exception for situations in which there are exigent circumstances. *State v. Parrish,* 852 S.W.2d 426, 429 (Mo.App. 1993).

Gibbs claims that this situation did not involve exigent circumstances. He says that therefore his arrest was illegal. He specifically requests a suppression of (1) the evidence found during the patdown after his arrest: the $249 in his pocket, the two knives, and the pipe used for smoking crack cocaine, (2) the identifications that Ms. Luetjen and Ms. Carpenter made at the motel after his arrest, (3) the statements made to the police officers at the police station after his arrest, (4) the jacket and note in the jacket pocket found after he told the police where he had put

it, and (5) the money found in his shoe after he told Officer Turner where to look for it.

## The *Payton* Principle

The U.S. Supreme Court in *Payton v. New York* concluded that the Fourth Amendment prohibits police from "making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton*, 445 U.S. at 576, 100 S.Ct. 1371. Theodore Payton was suspected in the murder of a gas station manager. *Id.* The police located his apartment and broke the door down in order to enter it without a warrant. *Id.* They found evidence that was later admitted at Payton's murder trial. *Id.* at 577, 100 S.Ct. 1371. Focusing on the significant privacy interest one has in his home, the Court stated that, absent exigent circumstances, police may not validly enter into a suspect's home without a warrant. *Id.* at 590, 100 S.Ct. 1371. Even when the police have a search warrant, the common law "knock and announce" principle must be considered as a part of the reasonableness inquiry. *Wilson*, 514 U.S. at 929, 115 S.Ct. 1914.

The need to knock and announce yields under exigent circumstances. *Id.* at 936, 115 S.Ct. 1914. Such circumstances include situations in which there is a threat of physical violence, where a prisoner escapes and retreats into his home, or where it is likely that evidence would be destroyed if advance notice were given. *Id.* The United States Supreme Court in *Wilson*, while recognizing that the facts could support a finding of exigent circumstances in that case, noted that the Arkansas Supreme Court had never made a factual determination in that regard. The Court remanded the case to the state court to determine whether the unannounced entry was reasonable in that instance. *Id.* at 937, 115 S.Ct. 1914.

When the Supreme Court next visited the issue of "knock and announce" procedures, the Court held that there is no *per se* rule attached to particular kinds of crimes whereby knock and announce procedures are inapplicable. *See Richards v. Wisconsin*, 520 U.S. 385, 388, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). However, the court reaffirmed that if the police have a reasonable suspicion that, under the particular circumstances of the case, knocking and announcing would be dangerous or futile or would inhibit investigation such as through the destruction of evidence, the unannounced entry would still be justified. *Id.* at 394, 117 S.Ct. 1416.

In this case, Gibbs was in his motel room when the door was opened. There was a reasonable privacy interest disrupted by the police. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (motel employee could not consent to the search of a motel room that had been legitimately rented by a motel guest); *see also Mitchell*, 20 S.W.3d at 557. When rented by a person, a motel room generally carries the same expectation of privacy as one's home. *Rowland*, 73 S.W.3d at 822.

The State contends that Sergeant Ahern's entry into Gibbs's motel room without a warrant was justified based on exigent circumstances. The State points out that Gibbs was suspected of robbing a bank and that in the course of that robbery the robber stated he had a gun, thereby impliedly threatening the use of the gun. The State contends that Gibbs presented a threat of physical violence to Sergeant Ahern and to people in the vicinity of the motel. Gibbs contends that because Ahern and Chief Litschauer had all the exits from the motel room covered,

there is little likelihood that Gibbs posed a threat to anyone.

The officers had no reason to believe that there was anyone in the motel room other than Gibbs. Therefore, the argument that Gibbs was a threat to people other than the officers is too tenuous to support a finding of exigent circumstances by itself. *See Ricketts,* 981 S.W.2d at 662.

■ When officers are aware of facts that indicate that knocking and announcing may endanger their safety, exigent circumstances can exist. *See United States v. Maxwell,* 25 F.3d 1389, 1395 (8th Cir.1994). However, the State fails to distinguish this case from *Payton* in such a way as to show that Sergeant Ahern should reasonably have anticipated that knocking and announcing would increase the danger to him. It is not entirely clear that an attempt at surreptitious entry with a key would be safer than standing beside the door (rather than in front of it), banging on the door, and announcing that police have the area surrounded. The courts have ruled that a reasonable belief that firearms *may* be present within a location, standing alone, is insufficient evidence of exigent circumstances. *United States v. Marts,* 986 F.2d 1216, 1218 (8th Cir.1993). More significant is information indicating that the suspect's record indicates the suspect may be considered dangerous or violent or might be inclined to use the firearms against the officers. *Id.* at 1217. Cases in which courts have held that officers' fear for their own safety or the safety of others was justified have generally included more information than merely that the suspect apparently had a firearm and was suspected of committing a crime. *See, e.g., Maxwell,* 25 F.3d at 1395 (suspect had recently purchased a .25 caliber handgun, had a propensity for violence, had a prior felony conviction for assault with the use of a weapon, police had intercepted phone calls where suspect had described assaults he committed, and suspect had associations with a gang with a reputation for violence); *United States v. Murphy,* 69 F.3d 237, 243 (8th Cir.1995) (suspect sometimes carried a weapon, had weapons in his home, had threatened to kill a Jew or blow up a synagogue, had a violent past, had shot a person following an argument, and was on parole from a second-degree murder conviction).

In some cases, the courts have found no exigent circumstances even though firearms were reasonably thought to be in the premises. Generally these cases have not involved violent crimes or other evidence that the suspect is violent. *See Ricketts,* 981 S.W.2d at 662 (suspect was a drug trafficker but did not have any prior convictions; and although there may have been a reasonable belief that weapons were in the home, without more this was insufficient to justify a no knock entry); *State v. Varvil,* 686 S.W.2d 507, 512 (Mo. App.1985) (suspect was involved in selling stolen automobile parts; suspect was armed but no shots had been fired for several hours and he was in a building that was completely staked out by the police); *Marts,* 986 F.2d at 1217 (suspect was involved in drug trafficking and illegal firearms; firearms were reasonably suspected to be in the residence; but there was no information to indicate suspect was likely to use firearms against the officers).

Exigent circumstances and probable cause will justify an entry and search without a search warrant, but still the knock and announce procedure should be followed unless the officers are reasonably in fear for their own safety. *Payton,* 445 U.S. at 588–590, 100 S.Ct. 1371. Some exigent circumstances will justify a search without a warrant. *See, e.g., United States v. Easter,* 552 F.2d 230 (8th Cir.1977) (suspects who had just committed robbery at

gunpoint entered a residence carrying weapons). Other exigent circumstances may justify failing to knock and announce. *See Wilson*, 514 U.S. at 936, 115 S.Ct. 1914.

■ The State relies on a recipe of considerations created by the Missouri courts for determining when exigent circumstances exist generally. The factors to be considered by the court that favor a finding of exigent circumstances are:

(1) that a grave offense is involved, particularly a violent crime; (2) the suspect is reasonably believed to be armed; (3) a clear showing of probable cause to believe the suspect committed the offense; (4) strong reason to believe the suspect is in the premises to be entered; (5) a likelihood the suspect will escape if not swiftly apprehended; (6) the entry, though not consented, is made peaceably.

*Varvil*, 686 S.W.2d at 512. The State contends that this case meets all factors. Here factors (1), (2), (3), and (4) arguably are met, but that is not necessarily the end of the inquiry. We must be mindful of the Supreme Court's mandate in *Richards* that there is no *per se* rule for a "no knock" entry, but that each case must be decided based on its own *particular* set of circumstances. *Richards*, 520 U.S. at 394–95, 117 S.Ct. 1416.

If a *per se* exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless.

*Id.* at 394, 117 S.Ct. 1416.

In the present case, the State says that the police were on a "manhunt." Although it was a "manhunt," it was not necessarily a manhunt for a desperate and violent offender who was a serious threat to take hostages or engage in other immediate mayhem. It was a manhunt for a man in a motel room who had apparently committed a robbery (in which no weapon was displayed and no one was injured) and whose transportation consisted of a bicycle and his feet.

There is no argument here that the police needed either a search warrant or an arrest warrant to make the arrest, but it is not so clear that the "no knock" entry was justified by the exigent circumstances. There was no evidence at the suppression hearing indicating that police had any indication that Gibbs had actually used a gun in the robbery or had any history of violence. Nor was there any evidence that there was such an urgency that the police did not have time to run criminal records check on Gibbs.

■ The State also argues, though, that this is not about "knock and announce" because Gibbs was not apprehended in his motel room, but outside the motel room in a public place. In response, Gibbs notes that he was "seized" when Sergeant Ahern grabbed his legs as he was attempting to escape out of the window. Gibbs relies on the rule that "the mere grasping or application of physical force" constitutes a seizure or arrest, regardless of whether or not this application of force succeeded in subduing the arrestee. The State contends that the ultimate subduing of Gibbs outside of the motel was separate from the initial attempt to seize Gibbs; therefore, the State argues, knock and announce does not apply. It is true, as noted in *California v. Hodari D.*, 499 U.S. 621, 624–25, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), that if an arrestee breaks away, the initial seizure is ended. Here, however, there was such a substantial continuity of action for knock and announce purposes that it would un-

dermine the constitutional rule of *Payton* to say that the consequences of the rule can be avoided when the suspect flees his dwelling in response to the unannounced entry.

It is true that in *New York v. Harris,* 495 U.S. 14, 20, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), the court indicated the suppression of evidence in a *Payton* violation would be limited to evidence found, or statements taken, inside the dwelling unit. *Harris,* however, did not involve a case in which the suspect fled from his apartment and was apprehended outside the apartment. Similarly, *United States v. Wixom,* 460 F.2d 206 (8th Cir.1972), and *United States v. Pierson,* 219 F.3d 803 (8th Cir. 2000), are not on point because they did not involve unannounced entry into the hotel rooms, but involved arrests after each suspect had voluntarily left the room for reasons not related to a *Payton* violation. In *Pierson,* for instance, the officers phoned the suspect, pretended to be hotel management, and asked him to come to the front desk of the hotel. Although the officers in *Pierson* used deception to get the suspect out of his room, they did not first invade the suspect's private dwelling.

If a suspect fleeing an unannounced entry could be arrested outside of the motel room with no consequence flowing from the *Payton* violation, officers, by simply allowing the suspect to try an escape, and then arresting him outside, could nullify the *Payton* principle.

It does not appear that we can justify the "no knock" entry under *Payton* in these circumstances. The fact that the alleged crime was an armed robbery (in which there was a threat that he might have a gun and might use a gun) does not appear, by itself, to be enough. *See Richards,* 520 U.S. at 394, 117 S.Ct. 1416. The fact that firearms *might have been* in the motel room is not enough. *See Marts,* 986

F.2d at 1218. There was no other evidence (apart from the facts of the robbery itself) that the suspect was likely to be violent. *See Maxwell,* 25 F.3d at 1395; *Murphy,* 69 F.3d at 243. Thus, we conclude that Sergeant Ahern's unannounced opening of the door without first knocking and announcing was not in accordance with the Fourth Amendment standards expressed in *Payton.*

Because of the failure to knock and announce before entering, the evidence derived from the seizure and patdown was not properly admissible under *Payton* unless there was some applicable exception to the *Payton* rule. Here, if we consider the fact that Gibbs managed to get outside of the motel room as not being an exception, we do not have one. The State, in any event, fails to argue any other theory of exception.

If the police had possessed a search warrant, our analysis might be different as to any items Gibbs possessed that were apparently related to the robbery, such as the wad of money. In *Hudson v. Michigan,* —— U.S. ——, ——, 126 S.Ct. 2159, 2162, 165 L.Ed.2d 56 (2006), in which the Supreme Court addressed the issue of whether violation of the "knock and announce" rule requires suppression of all evidence found in a search, the Court held that the rule does not prevent the State from taking evidence that was anticipated in a legitimate warrant, even if the police failed to "knock and announce." *Id.* at 2165. The Court based this decision on the conclusion that the interests protected by the "knock and announce" rule are somewhat different from the interests protected by the unreasonable seizure of evidence. *Id.*

In the present case, there was no search warrant, and no one suggests that, for purposes of making the arrest, the

police needed to get one. Also, neither party rejects the notion that there would have been grounds for the issuance of a warrant. Because *Hudson* was decided recently, there is little case law interpreting the decision relating to situations not involving a search warrant. Two cases based on *Hudson* declined to exclude evidence obtained *even without* a warrant, though there was a failure to knock and announce. *In re Frank S.*, 142 Cal. App.4th 145, 47 Cal.Rptr.3d 320, 324 (2006); *United States v. Smith*, 457 F.Supp.2d 802, 806 (D.Mich.2006). Both of these cases involved parolees. Because parolees have a lesser privacy interest, only a reasonable suspicion is required to conduct a warrantless search of their homes. *See Smith*, 457 F.Supp.2d at 803. Both cases involved situations in which there was a reasonable suspicion sufficient for a search without a warrant, but where officers failed to knock and announce their presence. *Id.* at 806; *Frank S.*, 47 Cal. Rptr.3d at 324. Both courts concluded that the reasoning in *Hudson* could be applied to warrantless searches of this type, assuming that the search itself was lawful, but that the "knock and announce" rule had been violated. *Smith*, 457 F.Supp.2d at 806; *Frank S.*, 47 Cal.Rptr.3d at 324.

We are persuaded, however, that *Payton* still governs non-parolee cases (such as this one) involving a failure of knock and announce without a search warrant. We conclude that the wad of money, the knives, and the glass pipe should have been suppressed as fruit of the knock and announce violation.

We do not decide, as Gibbs would like us to, that the arrest itself was illegal. Gibbs fails to persuade that the fact that under *Payton* there was a violation of "knock and announce" means that the arrest was invalid. In view of *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13

(1990) and *Hudson v. Michigan*, —— U.S. ——, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), in which the court limited the "fruit of the poisonous tree" doctrine, we conclude that the arrest itself, supported as it was by probable cause, was not illegal. *See Harris*, 495 U.S. at 19, 110 S.Ct. 1640 ("Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given *Miranda* warnings, and allowed to talk.")

### The Out–of–Court Identifications

■ Although there was a violation of knock and announce, evidence of the eyewitnesses' identification of Gibbs at the motel would not have to be excluded. We do not wish to suggest that the purpose of knocking and announcing is to give a suspect a better shot at an escape. The purpose, according to *Payton*, is simply a reasonable accommodation of privacy interests under the circumstances. Thus, we conclude, the failure to knock and announce would have had no effect on either the out-of-court (at the motel) identifications of Gibbs as the robber, or the identifications in court. The identifications, both at the motel and in court, were admissible. *See United States v. Crews*, 445 U.S. 463, 471–74, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

### Statements Made at the Police Station

■ Regardless of the "knock and announce" violation, the statements made at the police station were also properly admitted. *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). The Court in *Harris* held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an

arrest made in the home in violation of *Payton.*" *Harris,* 495 U.S. at 21, 110 S.Ct. 1640. The court in *Hudson* appeared to reaffirm the holding in *Harris. Hudson,* 126 S.Ct. at 2164–65.

The Court in *Harris* reasoned that the statements made outside the home, or in this case, outside the motel room, are not the fruit of the fact that there was a knock and announce violation. *Harris,* 495 U.S. at 20, 110 S.Ct. 1640. Applying the reasoning in *Harris* to Gibbs's case, the fact that Gibbs's arrest may have violated the "knock and announce" rule has no bearing on whether his statements were made voluntarily or not. Suppressing the statements merely because the officer failed to knock and announce his presence would not serve the purpose of the rule created by *Payton. See id.* The requirements are meant to protect the privacy of Gibbs's motel room and anything incriminating gathered from arresting Gibbs in his motel room. *See id.* Because these statements were taken at the police station, suppression of such statements would not further the rule created in *Wilson,* and would contravene the mandate of *Harris.* Therefore, the statements made at the police station were properly admitted.

### The Jacket, the Demand Note, and the Money in the Shoe

 The jacket and demand note and the money in the shoe were the direct result of statements made by Mr. Gibbs at the police station. The lower court determined, and Gibbs does not contest on appeal, that the statements given at the police station were voluntary and that Gibbs understood and voluntarily waived his *Miranda* rights when he gave these statements. The official misconduct here (the use of the key to open the door without announcement) had nothing to do with Gibbs's statements later made to jail offi-

cers. *See Harris,* 495 U.S. at 20, 110 S.Ct. 1640. Therefore, there is no reason to suppress these items, as their admission resulted only from voluntary statements given to the police.

### Summary as to Knock and Announce

In summary, we conclude that the items recovered from Gibbs at the time of his arrest outside the hotel room should have been excluded from evidence under *Payton v. New York.* At the same time, because of the overwhelming evidence of guilt in the case appearing from the properly introduced evidence (including the identification testimony, the admissions of guilt, the money in the shoe, the jacket, and the demand note), we conclude that the record shows beyond a reasonable doubt that the erroneous admission in evidence of the items he possessed at the time of his arrest was harmless error.

### Section 544.200

 Gibbs also contends that the failure to knock and announce violated section 544.200, RSMo 2000, which provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door or window of a dwelling house or other building, or any other enclosure, if, after notice of his office and purpose, he be refused admittance.

The apparent purpose of this statute is to reduce unnecessary damage to property caused by overzealous police officers seeking to make an arrest. It concerns the breaking open of doors and windows. The breaking is not authorized to occur unless the officer is first refused admittance. The statute thus differs somewhat from the old common law knock and announce principles recognized in *Payton.* While this statute may also include privacy concerns, its very language suggests it is primarily concerned with property damage.

*See Green v. Denison,* 738 S.W.2d 861, 867 (Mo. banc 1987) ("There [was] no violation of the terms of the statute. No officer broke an outer or inner door or window."). *Payton,* on the other hand, is apparently less about breakage of property than it is about unannounced intrusion onto privacy. Here, because of the facts of this case, Section 544.200 is inapplicable. The officer opened the door with a key, which was an intrusion but not a destruction of any property; and it was not until after Gibbs started to make his escape (thereby impliedly refusing admittance) that the officer forced the door, which was chain-locked. The statute allows breaking when the officer is refused admittance. For these reasons, Officer Ahern did not violate section 544.200.

### Sufficiency of the Evidence of Resisting Arrest

■ Next Gibbs challenges the sufficiency of the evidence on the conviction of resisting arrest. When reviewing the sufficiency of the evidence, we consider all evidence and all reasonable inferences in favor of the verdict, and we reject all contrary evidence and inferences. *Parrish,* 852 S.W.2d at 428. Our review is limited to whether the jury had substantial evidence before it from which it could find the defendant guilty beyond a reasonable doubt. *Id.* Substantial evidence is evidence from which the jury can reasonably find the issue in harmony with the evidence. *Id.*

Mr. Gibbs was convicted of resisting arrest in violation of section 575.150 RSMo. In relevant part, section 575.150 provides:

1. A person commits the crime of resisting or interfering with arrest ... if, knowing that a law enforcement officer is making an arrest ... or the person reasonably should know that a law enforcement officer is making an arrest[,] for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest ... by using or threatening the use of violence or physical force or by fleeing from such officer[.]

The statutory language makes it a prerequisite to conviction that the defendant knew or should have known that an officer was making or attempting to make an arrest. *State v. Christian,* 184 S.W.3d 597, 603 (Mo.App.2006). Gibbs contends that there was insufficient evidence from which the jury could conclude that Gibbs knew Sergeant Ahern and Chief Litschauer were law enforcement officers, rather than others of Gibbs's enemies, attempting to subdue him.

There was circumstantial evidence from which the jury could reasonably infer that Gibbs knew or should have known that law enforcement officers were attempting to arrest him. The fact that the evidence is circumstantial does not make it less sufficient. *See State v. Hutchison,* 957 S.W.2d 757, 767 (Mo. banc 1997).

Sergeant Ahern testified that he opened the door wide enough to be able to see Gibbs sufficiently to determine that he matched the description of the suspect for whom he was looking. From this, the jury could infer that the door was also opened wide enough for Mr. Gibbs to see the police uniform that Ahern was wearing.

Chief Litschauer testified that while he and Ahern were attempting to hold him down to subdue him, Gibbs turned his head over quite a few times (to look back at them). From this, the jury could reasonably infer that Gibbs could see that Sergeant Ahern was wearing a police uniform.

Gibbs argues that the officers never testified that they identified themselves as

law enforcement, and so he could not have known that it was law enforcement that was attempting to subdue him. He also argues that the officers pepper-sprayed him, impairing his vision. These arguments are for the jury to consider. The jury could have concluded from this evidence that Gibbs did not know law enforcement was attempting to subdue him, but it could also have concluded that he did know law enforcement was attempting to subdue him.

There was sufficient evidence from which a reasonable jury could infer that Gibbs was aware that law enforcement officers were attempting to subdue him. If we consider all evidence and all reasonable inferences in the light most favorable to the verdict and reject the contrary evidence and inferences, we must conclude that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that Gibbs knew law enforcement was attempting to subdue him and was resisting their efforts through the use of force.

### Conclusion

The evidence seized from Gibbs at the time of his arrest and patdown was improperly admitted, because it was seized in violation of the knock and announce principle which is implicit in the Fourth Amendment, as recognized in *Payton*. The other evidence in the case, however, including, *inter alia*, the admissions of guilt, the money found under the sole of the shoe, the jacket, the demand note, and the eyewitness identifications, constituted overwhelming evidence of guilt of the robbery charge. Thus, the error in failing to exclude the evidence seized in connection with the arrest and patdown was harmless beyond a reasonable doubt.

The evidence also supported the verdict of guilt in connection with the offense of resisting arrest.

We affirm the judgment of convictions for first degree robbery and for resisting arrest.

ULRICH and LOWENSTEIN, JJ., concur.